**James RYAN, Plaintiff,**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, et al., Defendants.**

**Civ. A. No. 93–646 (JCL).**

United States District Court,
D. New Jersey.

March 31, 1994.

[plea].

Picco, Mack, Herbert, Kennedy, Jaffe & Yoskin, Maeze E. Cannon, Diane A. Davis, Trenton, NJ, for plaintiff.

Connell, Foley & Geiser, Stephen D. Kinnard, Roseland, NJ, for defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Presently before the Court is plaintiff's motion to remand this action to state court. Defendants oppose the motion. For the reasons set forth below, the Court will grant plaintiff's motion.

### Background

#### Procedural History

On January 7, 1993, plaintiff James Ryan ("Ryan") filed this action in the Superior Court of New Jersey, Law Division, Middlesex County, New Jersey. On February 16, 1993, defendants removed this action to the U.S. District Court for the District of New Jersey. The basis for removal of the action was diversity of citizenship.

On July 22, 1993, Ryan amended the Complaint to add Puerto Rico Marine Management Incorporated ("PRMMI"), Ryan's former employer, as a defendant. The addition of PRMMI destroyed diversity because Ryan is a resident of New Jersey and PRMMI is a Delaware corporation which has its principal place of business in New Jersey. On July 27, 1993, Ryan served defendants with its notice of motion to remand the case.

#### Ryan's Retaliatory Discharge Claim

Defendant PRMMI operates and manages defendant Puerto Rico Maritime Shipping Authority's ("PRMSA") shipping line. (Amended Complaint ¶ 11; Cannon Cert. ¶ 4). Ryan was employed as Vice President of Security for PRMMI. (Amended Complaint ¶ 12; Cannon Cert. ¶ 4). Pursuant to his duties as Vice President of Security, Ryan was involved in the internal investigation of both PRMSA and PRMMI employees. (Amended Complaint ¶ 16). The Amended Complaint enumerates investigations by Ryan which resulted in the criminal prosecution of PRMSA-appointed PRMMI employees or their removal from employment.

(Amended Complaint ¶ 16(a)–(f)). Ryan alleges that PRMSA initiated harassing investigations of him and the PRMMI security department in mid–1988 after Ryan discharged the friend of the Director of Security for PRMSA. (Amended Complaint ¶¶ 17, 18).

Ryan alleges that defendants fraudulently induced him into accepting early retirement at PRMMI by misrepresenting to him that his position as Vice President of Security was to be eliminated. (Amended Complaint ¶ 19). In connection with the early retirement, Ryan executed a Part One Waiver and Release of Liability on January 10, 1992 and a Part Two Waiver and Release of Liability on June 30, 1992 ("Part One and Part Two Releases"). (Amended Complaint ¶¶ 21, 22). Ryan's early retirement was effective on June 30, 1992. (Amended Complaint ¶ 21). Ryan learned in July 1992 that PRMSA had not in fact eliminated Ryan's position and instead, had hired a new Vice President of Security who commenced his employment on July 1, 1992, the day after Ryan's early retirement. (Amended Complaint ¶ 23). Ryan alleges that but for the defendants' knowing, intentional and material misrepresentation regarding the elimination of his position, he would not have taken early retirement. (Amended Complaint ¶ 24).

Based on those allegations, Ryan alleges that defendants violated the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19–1, et seq.[1] Ryan seeks equitable relief rescinding the Part One and Part Two Releases, an injunction restraining PRMSA from any further retaliation against Ryan or continuing violations of the Conscientious Employee Protection Act, reinstatement to his position as Vice President of Security, reinstatement of full fringe benefits, seniority rights and lost wages since July 1, 1992, and punitive damages. Ryan also alleges other common law claims includ-

---

1. N.J.S.A. 34:19–3 provides in relevant part:
   An employer shall not take any retaliatory action against an employee because the employee does any of the following:
   (a) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.
   N.J.S.A. 34:19–2(a) defines "employer" to include "any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent."

ing tortious interference with contractual rights, tortious interference with his prospective economic expectations, defamation, intentional infliction of emotional distress, and invasion of his privacy. (Amended Complaint Counts II–VI).

### Discussion

28 U.S.C. § 1447(e) provides:

If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to state court.

By order dated July 13, 1993, Magistrate–Judge Hedges allowed Ryan to amend his Complaint to add PRMMI as a defendant. Ryan argues that when PRMMI, a non-diverse party, was joined as a defendant in the Amended Complaint, the basis of this Court's subject matter jurisdiction over the matter (i.e. diversity) was destroyed. Ryan argues that 28 U.S.C. § 1447(e) mandates that this Court remand this action to the Superior Court of New Jersey since it no longer has subject matter jurisdiction over this action. *See Steel Valley Authority v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010–11 (3d Cir.1987), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988) ("when a nondiverse party is added to a federal proceeding and that party's presence is indispensable to the furnishing of complete relief, remand is mandated where federal subject matter jurisdiction depends on diversity jurisdiction, even though removal was originally proper.").

In opposing Ryan's motion to remand, defendants argue that this Court has subject matter jurisdiction over this action under ERISA, because Ryan's principal cause of action relates to the early retirement plan, an employee benefit plan governed by ERISA. Defendants contend that Ryan's action seeks reconfiguration of his pension rights. Defendants argue that ERISA was designed to bring within its scope all state law causes of action for breach of contract, tort claims for bad faith, and state common law claims for fraud, misrepresentation, and tortious interference with contractual relations. (*See* cases cited in Def.Br. at p. 7). Therefore, defendants argue that Ryan's sole remedy is

under ERISA which preempts his state common law causes of actions.

■ Defendants also argue that this Court has another independent basis for jurisdiction—PRMMI's counterclaim against Ryan for breach of his ERISA-governed early retirement plan asserts ERISA as a basis for jurisdiction. Because the well-pleaded complaint rule requires that the federal question be presented on the face of the plaintiff's properly pleaded complaint, defendant PRMMI's counterclaim based on ERISA cannot form the basis of this Court's subject matter jurisdiction over Ryan's complaint.

■ Furthermore, it appears that PRMMI's counterclaim is based on breach of contract, not on ERISA. PRMMI alleges that Ryan signed two releases releasing defendants from any claims he had against them, and that Ryan breached those releases by bringing this suit. Therefore, PRMMI's counterclaim is not based on ERISA and cannot, as defendants argue, provide an independent basis of subject matter jurisdiction over this action.

■ A court determines whether a cause of action arises under federal law by examining the well-pleaded complaint to determine whether it alleges violations of federal law. *See Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Federal preemption which is offered as a defense to an action does not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court, *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). However, the Supreme Court determined that an action is removable (though the Complaint asserts only state law causes of action) if the state law claims asserted in the complaint are completely preempted by ERISA and fall within the scope of ERISA's civil enforcement provision, section 502(a). *Id.* at 63–66, 107 S.Ct. at 1546–48.

The Court must first determine whether ERISA preempts the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19–3(a). The parties do not cite any cases in which any court has addressed this issue

and the Court's own independent research has revealed none.

ERISA § 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). The Supreme Court held that "[a] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). The Supreme Court has stated that Congress used the words "relate to" in their broad sense:

Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

■ Courts have found four categories of state laws preempted by ERISA:

(1) laws that regulate the types of benefits or terms of ERISA plans; (2) laws that create reporting, or disclosure requirements for ERISA plans; (3) laws that provide rules for the calculation of benefits to be paid under ERISA plans; and (4) laws that provide remedies for misconduct growing out of the administration of ERISA plans.

*See, e.g., Felton v. Unisource Corp.*, 739 F.Supp. 1388, 1390 (D.Ariz.1990), *aff'd and rev'd in part*, 940 F.2d 503 (9th Cir.1991); *see also, Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) (listing types of state laws preempted by ERISA).

ERISA also preempts state common law or statutory causes of action for wrongful discharge premised on allegations that the employer discharged an employee because the employee asserted rights under an employee benefit plan. *See Ingersoll–Rand*, 498 U.S. at 141–44, 111 S.Ct. at 484–85 (employee's claim that employer wrongfully terminated him to avoid contributing to or paying benefits under employee's pension fund was preempted by ERISA); *Authier v. Ginsberg*, 757 F.2d 796, 800 (6th Cir.), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985) (holding state law wrongful discharge claim based upon allegation that employer discharged plaintiff who was the plan fiduciary for complying with ERISA provisions was preempted by ERISA); *McLean v. Carlson Companies, Inc.*, 777 F.Supp. 1480, 1483 (D.Minn.1991) (retaliatory discharge claim based upon allegation that employer discharged plaintiff because plaintiff in good faith reported a violation of ERISA was preempted by ERISA).

■ Defendants cite *McLean* for the general proposition that a whistleblower claim is preempted by ERISA. However, the plaintiff in *McLean* claimed she was discharged in retaliation for reporting violations of federal law, including violations of ERISA. The court held that to prove her claim that she was discharged in retaliation for reporting violations of ERISA, plaintiff must describe the conduct she perceived to be violative of ERISA with reference to the ERISA provisions which the conduct purportedly contravened. *McLean*, 777 F.Supp. at 1483. Because the Court found that plaintiff's claim referred to the ERISA plan and depended upon its existence, the Court found that her retaliatory discharge claim was preempted by ERISA. *Id.* at 1483.

The present case is factually dissimilar to *McLean*. Unlike *McLean*, there are no allegations that any of the PRMSA or PRMMI employees that Ryan investigated and reported were violating ERISA. Thus, Ryan's claim under the Conscientious Employee Protection Act does not depend upon an ERISA plan.

Ryan's claim under the Conscientious Employee Protection Act alleges that he was fraudulently induced to accept early retirement as a result of defendants' misrepresentations that his position was being terminat-

ed and that defendants made these misrepresentations in retaliation for Ryan's investigations of certain employees who violated non-ERISA law. As a consequence of defendants' misrepresentations, Ryan began receiving benefits from a pension plan. In *Ingersoll–Rand*, the Supreme Court held that ERISA preempts a wrongful discharge claim when the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. 498 U.S. at 139, 111 S.Ct. at 483. Since the existence of a pension plan is not required for liability under the Conscientious Employee Protection Act, the Court finds that the Conscientious Employee Protection Act is not preempted by ERISA. The Act is not intended to serve the purposes of ERISA, nor does it provide an alternative cause of action to ERISA. Furthermore, ERISA does not provide a cause of action for vindication of the interest sought by Ryan.

■ Courts have also held that ERISA does not preempt a wrongful discharge action where the claimed loss of pension benefits was an aspect of plaintiff's damages, but not the basis of plaintiff's lawsuit. In *Tippett v. Old Kent Bank of Petoskey*, 134 F.R.D. 159, 160 (W.D.Mich.1991), defendants, in an effort to defeat remand of plaintiff's wrongful termination case to state court, argued that the plaintiff's wrongful termination claim was preempted by ERISA. The Court rejected that argument, stating

> [T]his is not a suit to enforce pension benefit rights. Plaintiff is merely claiming that loss of pension benefits is one aspect of the damages caused by her discharge. A claim for wrongful discharge which seeks damages including loss of pension benefits, does not "relate to" a covered plan [under ERISA]. . . . Nowhere in the complaint does plaintiff suggest that the true purpose of her discharge was to deprive her of pension rights. No ERISA cause of action lies when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of employment.

*Id.* at 160–61. *See also Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120–21 (4th Cir. 1989) (holding claims for wrongful discharge based on oral contract of employment for a term not preempted by ERISA even though damages would be measured in part by lost pension benefits). This Court finds the reasoning of *Tippett* and *Pizlo* persuasive.

In Count One of the Amended Complaint (the Conscientious Employee Protection Act claim), Ryan asks, among other things, that this Court rescind the Part One and Part Two Releases. Here, Ryan's claim is that he was fraudulently induced into early retirement in retaliation for investigating certain PRMSA and PRMMI employees in the course of his job as Vice President of Security. There are no allegations in the Amended Complaint that defendants fraudulently induced him to retire to avoid any pension obligations. As relief for defendants' violation of the Conscientious Employee Protection Act, Ryan seeks to have this Court place him in the position he would have been in had he not been fraudulently induced into accepting early retirement. Such relief would include rescinding the Part One and Part Two Releases and reinstating him as Vice President of Security. Although the pension plan may be implicated in the relief Ryan seeks, Ryan's claim of retaliatory discharge is based on work performance, not on ERISA. *See Tippett*, 134 F.R.D. at 160–61; *Pizlo*, 884 F.2d at 120–21. Furthermore, any effect Ryan's action would have on the employee benefit plan would be too tenuous, remote or peripheral to warrant a finding that the Conscientious Employee Protection Act "relates to" the plan. *See Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Accordingly, the Court finds that Ryan's claim is not preempted by ERISA.

Since Ryan's Complaint contains no federal question and since diversity jurisdiction was destroyed with the joinder of PRMMI as a defendant, this Court no longer has subject matter jurisdiction over this action. Accordingly,

**IT IS** on this 31st day of March 1994 **ORDERED** that plaintiff's motion to remand the action to the Superior Court of New Jersey, Law Division, Middlesex County, pursuant to 28 U.S.C. § 1447(e), is granted.